
FILED
OCT 07 2019
Clerk, U.S. District Court
District Of Montana
Missoula

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CR 15–07–H–DWM |
| Plaintiff, | |
| vs. | ORDER |
| CARRI ROBERTSON, as Personal Representative of the Estate of Joseph Robertson, | |
| Defendant. | |

On April 15, 2019, the Supreme Court made the perplexing decision to grant Robertson's petition for certiorari upon his death, notwithstanding its practice of dismissing petitions in such circumstances. *See Dove v. United States*, 423 U.S. 325, 325 (1976) (per curiam) *overruling in part Durham v. United States*, 401 U.S. 481 (1971); *Warden, Green Haven St. Prison v. Palermo*, 431 U.S. 911 (1977). The Supreme Court's decision contravened the rule that "the death of a criminal defendant pending an appeal of right will abate the prosecution *ab initio*, although death pending the Supreme Court's discretionary determination on a petition for a writ of certiorari will not." *United States v. Oberlin*, 718 F.2d 894,

1

896 (9th Cir. 1983). It also put this Court in the peculiar position of having to adjudicate the validity of Robertson's outstanding obligation to pay funds related to his appointed counsel.

Having reviewed the parties' briefing, (*see* Docs. 294, 294), and heard argument on October 4, 2019, the defendant's reimbursement obligations under the Criminal Justice Act ("CJA") have not been abated and the $1,550 currently held by the Court will be paid toward that debt.

## PROCEDURAL HISTORY

In May 2015, Defendant Joseph David Robertson was indicted on charges of unauthorized discharge of pollutants into waters of the United States, 33 U.S.C. §§ 1311(a), 1319(c)(2)(A), (Counts I and III); and malicious mischief – injury/depredation of property of the United States, 18 U.S.C. § 1361 (Count II). (Doc. 1.) His trial in October 2015 resulted in a hung jury and a mistrial was declared. (*See* Doc. 78.) A second jury trial was held in April 2016, and Robertson was convicted on all three counts. (Docs. 203, 204.) On July 20, 2016, he was sentenced to 18 months imprisonment. (*See* Docs. 240, 244.) He was also ordered to pay $300 in special assessments and $129,933.50 in restitution. (*Id.*) He appealed, (Doc. 246), and his conviction and sentence were affirmed by the Ninth Circuit Court of Appeals, (Docs. 270, 271). Robertson filed a petition for certiorari with the United States Supreme Court, which was granted in the name of

his wife, Carri Robertson, after Joseph died in March 2019. (Doc. 283.) The case was remanded to the Ninth Circuit for a mootness determination, (*id.*), and the Ninth Circuit then remanded to this Court with the direction that the undersigned vacate the indictment, judgment of conviction, the special assessment, and the restitution order, (Doc. 284). A mandate was issued on August 1, 2019, (Doc. 285), and on August 12, this Court did just that, (Doc. 289).

However, the August 12 Order also identified an outstanding issue in the case regarding the refund of Robertson's criminal monetary penalties. (*Id.*) Court records indicate that Joseph Robertson has paid $300.00 in assessments and $1,250.00 in restitution, for a total of $1,550.00. In light of his death, those payments are presumptively refundable. *See Nelson v. Colorado*, 137 S. Ct. 1249, 1257–58 (2017) (addressing restitution); *United States v. Hayes*, 385 F.3d 1226, 1229–30 (9th Cir. 2004) (addressing special assessments); Fed. R. Crim. P. 41(g) (governing the return of property). However, this case is unique in that prior to his conviction, Robertson was ordered to pay a lump sum of $12,000.00, plus an additional $300.00 per month, toward the cost of his representation under the Criminal Justice Act ("CJA"), 18 U.S.C. § 3006A(f). (*See* Docs. 113, 137, 146.) Robertson initially challenged the Court's CJA order on interlocutory appeal, (Doc. 153), but was unsuccessful, (Doc. 222). The Court's order for payment of

3

fees was affirmed on direct appeal, (Doc. 271), and was not challenged at the Supreme Court.

Financial records indicate that the Court has not received any payments from Robertson towards his outstanding CJA obligation. At the time he sought interlocutory appeal, the lump-sum payment of $12,000.00 was stayed pending the outcome of his appeal. (Docs. 158, 160.) Robertson was required, however, to continue to make his monthly payments of $300.00. (*Id.*) He did not do so. In addition to the lump sum of $12,000.00, Robertson's monthly obligations total $1,800.00 ($300.00 per month from February 2016 to July 2016). Appellate proceedings have concluded and $13,800.00 remains outstanding.

## ANALYSIS

The two questions thus remain: (1) whether an order for the repayment of CJA funds survives when an indictment and judgment are vacated and (2) if so, whether the refund of the monies paid by the now-deceased defendant towards his special assessment ($300) and his restitution ($1,250) can be put towards amounts owed under the CJA. Both are answered in the affirmative.

### I. The Obligation

The defendant's estate first argues that counsel was only appointed because the defendant was charged with a felony, *see* 18 U.S.C. § 3006A(a)(1)(A), meaning any CJA repayment obligation vanished when the indictment forming the

4

basis of that felony charge was vacated. Second, the estate argues that the payment obligation abated upon the defendant's death: "death pending appeal of a criminal conviction abates not only the appeal but all proceedings in the prosecution from its inception." *United States v. Rich*, 603 F.3d 722, 724 (9th Cir. 2010) (quoting *Oberlin*, 718 F.2d at 895). Neither argument is persuasive.

### A.     Scope of § 3006A

Section § 3006A confers broad authority to appoint counsel and, contrary to the estate's position, does not necessarily require the filing of felony charges. Section 3006A(a) outlines ten circumstances under which the provision of representation is mandatory and two where it is discretionary. Mandatory appointment includes situations where an individual "is entitled to appointment of counsel under the sixth amendment to the Constitution," § 3006A(a)(1)(H), and where an individual "faces loss of liberty in a case, and Federal law requires the appointment of counsel," § 3006A(a)(1)(I). These provisions are sometimes used to appoint pre-indictment counsel to a person under investigation by Federal authorities. Thus, an indictment is not a condition precedent for counsel to be appointed. Even if it were, however, the defendant's abatement argument is unpersuasive.

### B.     Abatement

The doctrine of abatement does not support vacating the payment of monies

5

owed under the CJA.[1]  This doctrine is based on the common law concept that when a defendant dies pending appeal, "everything associated with the case is extinguished, leaving the defendant as if he had never been indicted or convicted." *United States v. Libous*, 858 F.3d 64, 66 (2d Cir. 2017) (internal quotation marks omitted); *see also United States v. Brooks*, 872 F.3d 78, 90 (2d Cir. 2017).  But the application of the abatement doctrine has been far from uniform.  *See Bevel v. Commonwealth*, 717 S.E.2d 789, 793–94 (Va. 2011) (collecting cases) ("Given the diversity of opinion in the application of the abatement doctrine, it is perhaps not surprising that the doctrine's legal underpinnings are not well established.").  It has, however, been extended to payments made related to fines, *Libous*, 858 F.3d at 67; restitution, *Brooks*, 872 F.3d at 90–91; and criminal forfeiture, *Oberlin*, 718 F.2d at 896.

Whether the doctrine of abatement applies specifically to CJA obligations appears to be a question of first impression.  But two cases provide useful guidance.  In *Rich*, the Ninth Circuit determined that abatement does not apply to a

---

[1] As a point of clarification, the Supreme Court's decision in *Nelson* was based on due process grounds, not the doctrine of abatement.  137 S. Ct. at 1257–58.  But at least one circuit has held that "the reasoning of *Nelson* also compels abating monetary penalties where a defendant dies during his direct appeal, as there is no longer a valid conviction to support the government's retention of the penalty." *See United States v. Brooks*, 872 F.3d 78, 89 (2d Cir. 2017) (internal quotation marks and alteration omitted).

6

presentence receivership order. 603 F.3d at 727–28. Early in the case, the district court entered an order and appointed "a receiver to take from Rich the property he fraudulently obtained from investors and to restore it to them." *Id.* at 725. The Ninth Circuit ultimately determined that even though Rich's conviction was abated, the receivership "was not dependent in any way on [that] conviction" and therefore remained in place. *Id.* at 727. In contrast, the court held that the later-imposed "Restitution Order," which was contingent on the judgment, had to be abated because "it is inappropriate to impose restitution on the estate of a deceased individual who, in the eyes of the law, was never indicted or convicted." *Id.* at 729.

Analogously, the Second Circuit has held that a forfeited bond security is not subject to abatement because a bail bond order "was not made to adjudicate [the defendant]'s guilt or innocence for the charged offenses" but was "collateral to the determination of guilt or innocence in [the underlying] criminal case, arising out of a violation of separate orders and conditions entered by the court and agreed to by [the defendant] and his family members." *See Brooks*, 872 F.3d at 93–94 (discussing the contractual nature of a bond agreement). It further explained that "bond forfeiture also does not implicate the two principles underlying the doctrine of abatement *ab initio* (finality and punishment)." *Id.* at 94.

The situation here is similar to that in *Rich* and *Brooks*. An order requiring a

7

criminal defendant to make payments or partial payments towards his or her representation under the CJA is not made to adjudicate guilt or innocence. It is not dependent "in any way" on the defendant's conviction. *Rich*, 603 F.3d at 727; *see United States v. Wilson*, 597 F.3d 353, 358 (6th Cir. 2010) (requiring the defendant pay for legal services even when acquitted). Rather, a CJA payment obligation is set by separate order following the filing of a Form CJA-23 Financial Affidavit. (*See* Doc. 11.) That filing is "in support of request for attorney, expert, or other services without payment of fee," meaning the defendant has implicitly agreed to the terms of such an appointment. (*Id.*) The appointment is akin to a private contract with an attorney to furnish a defense. *See United States v. Standiford*, 148 F.3d 864, 870 (7th Cir. 1998) (describing a CJA reimbursement order "as an independent civil liability"). Had the defendant hired a private attorney in this proceeding, there would be no question that he owed for the services rendered regardless of the outcome.

Nor does such payment implicate either finality or punishment. As was the case in *Brooks*, 872 F.3d at 94, Robertson's direct challenges to the CJA Order were rejected and the Order was affirmed on appeal. (*See* Docs. 153, 222, 224, 246, 271.) Moreover, payments under the CJA are based on a defendant's financial ability to contribute to his or her own defense; they are not punitive. *See* CJA Guidelines § 210.40.20(g) (explaining that any judicial inquiry into a person's

assets cannot be used for any purpose but determining eligibility for appointed counsel); *cf. Oberlin*, 718 F.2d at 896 (describing tax fraud provisions as "clearly remedial and designed to reimburse the government").

*Brooks* also addresses the "but for" argument implicit in the estate's analysis:

> While it is true that 'but for' the prosecution of the case against him, [the defendant] would not have been subject to the bail bond and the resulting forfeiture, this argument fails. When the district court in this case imposed the terms of pre-trial release on [the defendant], it did so for reasons independent of his guilt or innocence. These terms and conditions were not determined by the outcome of the offenses prosecuted, and therefore the principles of abatement do not apply.

872 F.3d at 94. Such is the case here. *See also Addison v. Albany Cty.*, 432 P.3d 513, 516 (Wyo. 2018) (favorably citing *Brooks*).

Based on the considerations discussed above, abatement does not apply in this context.

## II. Funds Held by the Court

As mentioned above, the Court currently has $1,550 in its possession in the form of the refund of Robertson's criminal monetary penalties. Pursuant to § 3006A, the Court may direct funds be paid to the CJA if it "finds that funds are available for payment from or on behalf of a person furnished representation." 18 U.S.C. § 3006A(f). Thus, the necessary inquiry is whether the funds held by the

9

Court are considered "available for payment."[2] *See United States v. Bursey*, 515 F.2d 1228, 1236, 1238 (5th Cir. 1975); *United States v. Santarpio*, 560 F.2d 448, 455–56 (1st Cir. 1977); *United States v. Bracewell*, 569 F.2d 1194, 1198–1200 (2d Cir. 1978); *Bridges v. United States*, 588 F.2d 911, 912–13 (4th Cir. 1978); *United States v. Arnaiz*, 842 F.2d 217, 222 (9th Cir. 1988); *United States v. Nelson*, 609 F. App'x 559, 571–72 (11th Cir. 2015).

The first step in this process is to assess the financial condition of the defendant and the impact of such an order on his personal and family responsibilities to ensure "the defendant will not suffer extreme hardship as a consequence of being deprived of his funds." *See Bracewell*, 569 F.2d at 1199; *United States v. Parker*, 439 F.3d 81, 93–94 (2d Cir. 2006); *United States v. Konrad*, 730 F.3d 343, 347 (3d Cir. 2013). That inquiry already occurred in this case, when the initial order for reimbursement was entered, (Doc. 146), and affirmed, (Doc. 271).

---

[2] It is true that the United States, as a creditor, has the same right as other creditors to apply a debtor's money that is in its possession to extinguish debts due. *United States v. Munsey Trust Co.*, 332 U.S. 234, 239 (1947); *see also* 31 U.S.C. § 3713 (outlining the priority of government claims). However, the United States is not in possession of this money as creditor, rather the clerk of court has possession of a refund of a criminal monetary penalty. *See United States v. Jones*, 607 F.2d 687, 688 (5th Cir. 1979).

10

The second step of a § 3006A(f) inquiry is to determine whether the funds are "available." Generally, "[a]ssets are available when a defendant has control over or discretionary use of them." *Konrad*, 730 F.3d at 347, 350. Courts must also consider, however, whether there are "any claims to funds in a defendant's possession made by persons other than the defendant." *Bracewell*, 569 F.2d at 1200. "If monies paid on a defendant's behalf actually belong to a third party, then they are not 'available for payment.'" *Id.*; *United States v. Crosby*, 602 F.2d 24, 28 (2d Cir. 1979) (concluding that assets unconditionally paid to a third party were not "available"). But "[i]n the usual case, the district judge need not permit a full-fledged adversarial inquiry into the nature and amount of a defendant's assets; *nor need he become involved in determining priorities to those assets.*" *Bracewell*, 569 F.2d at 1200 (emphasis added): *see also United States v. Embry*, 128 F.3d 584, 586 (7th Cir. 1997) (rejecting the argument that money "earmarked" for another purpose "enjoy[ed] a higher priority than would money destined to replenish the public purse"); *Konrad*, 730 F.3d at 350 ("The CJA analysis is designed to determine the ability to pay future legal costs, rather than payment of an accrued debt.").

In *Bursey*, a defendant paid a bond deposit for pretrial release of $1,000. 515 F.2d at 1231. After the defendant's conviction was vacated on appeal and the indictment dismissed on remand, "the district court entered an order directing the

11

clerk of court to transmit $1,000, the amount of [the defendant]'s cash deposit on bond, to the Administrative Office of the United States Courts for deposit in the Treasury as reimbursement for the costs of his appointed counsel." *Id.* In doing so, the district court relied on § 3006A(f). *Id.* The order was appealed, and the defendant's parents intervened on the grounds that the cash deposit was their property and should have been returned to them. *Id.* at 1232. The Fifth Circuit reversed and remanded on the grounds that the mere existence of the bond deposit "did not necessarily establish that the Government was entitled to its recovery under § 3006A(f)" and the district court failed to make an "appropriate inquiry" into the availability of the funds given the parents' interest. *Id.* at 1236, 1237. Notably, however, the Fifth Circuit focused heavily on the unique nature cash bonds and the fact that someone other than the defendant furnished the money in the first place. *Id.* at 1236 ("[T]here is no reason to presume that any third party willing to provide funds for a bond deposit for a criminal defendant money which would ordinarily be refunded would necessarily also supply funds to be expended for the payment of counsel.").

Here, the Court received briefing from the parties and heard argument on this issue. *See Bridges*, 588 F.2d at 912–13; *Crosby*, 602 F.2d at 28. Unlike the situation in *Bursey*, there is no evidence that the money held by the Court was furnished by anyone other than the defendant. And, if Robertson were alive, there

is little doubt that funds refunded to him personally would be "available" considering the fact that he paid the money himself and such amounts are due under § 3006(f). Neither his death nor the creation of an estate alters those fundamental facts.[3] The $1,550 held by the clerk is therefore "available" under § 3006A(f) and shall be paid to the CJA.

## CONCLUSION

Accordingly, IT IS ORDERED that the clerk of court transmit the $1,550 to the Administrative Office of the United States Courts for deposit in the Treasury as reimbursement for the costs of Robertson's appointed counsel. *See* 18 U.S.C. § 3006A(f). Having fulfilled the terms of the remand, the clerk is further directed to close the case file.

DATED this 7th day of October, 2019.

12:05 P.M.

Donald W. Molloy, District Judge
United States District Court

---

[3] Both the administration of the defendant's estate in terms of creditor priority, *see* Mont. Code Ann. § 72–3–807, and any argument that the defendant's wife Carri may be an "interested person" in that proceeding, *see* Mont. Code Ann. § 72–1–103(25), are irrelevant to the § 3006A(f) inquiry. *See Bracewell*, 569 F.2d at 1200.