**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, v. CARRI ROBERTSON, in her capacity as Personal Representative of the Estate of Joseph David Robertson, *Defendant-Appellant.* | No. 19-30237  D.C. No. 6:15-cr-00007-DWM-1  OPINION |

Appeal from the United States District Court
for the District of Montana
Donald W. Molloy, District Judge, Presiding

Argued and Submitted September 2, 2020
Seattle, Washington

Filed November 12, 2020

Before: Jay S. Bybee and Daniel P. Collins, Circuit Judges,
and Richard G. Stearns,[*] District Judge.

Opinion by Judge Stearns

---

[*] The Honorable Richard G. Stearns, United States District Judge for the District of Massachusetts, sitting by designation.

## SUMMARY**

### Criminal Law

The panel affirmed the district court's order, on remand from this court, regarding continuing obligations under a Criminal Justice Act (CJA) reimbursement order in a case in which the defendant, whose conviction had been affirmed by this court, died while his Supreme Court certiorari petition was pending.

Following the defendant's death, the Supreme Court remanded to this court, which allowed the motion of the defendant's widow to vacate his conviction and sentence *ab initio* and to refund the amounts he had paid towards the special assessments and restitution. This court then remanded to the district court with instructions to vacate the indictment, judgment of conviction, special assessments, and restitution order. The district court did so, but held (1) that the CJA reimbursement order—entered after the defendant's first trial resulted in a mistrial, and requiring the defendant to make payments to reimburse in part the costs of his defense—was not abated by the dismissal of the indictment; and (2) that the amount the defendant had paid in special assessments and towards restitution was "available" under the CJA to be applied against the CJA obligation.

Rejecting the defendant's widow's contention that the dismissal of the indictment *ab initio* deprived the district

---

** This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

(3 of 19)
Case: 19-30237, 11/12/2020, ID: 11889435, DktEntry: 23-1, Page 3 of 15
Case 6:15-cr-00007-DWM   Document 302   Filed 11/12/20   Page 3 of 19

UNITED STATES V. ROBERTSON                    3

court of subject matter jurisdiction, the panel held that the district court had jurisdiction to determine whether its CJA reimbursement order was within the scope of the abatement doctrine.

The panel held that because a CJA reimbursement may be ordered in the absence of a conviction, the CJA reimbursement is not part of the criminal proceeding that is extinguished by abatement *ab initio*. The panel added that the CJA reimbursement order, which this court had previously affirmed, is a final order not subject to abatement.

Rejecting the defendant's widow's contentions regarding waiver, and "availability" of funds under the CJA, the panel held that the Government's agreement—on remand from the grant of certiorari from the Supreme Court—to return the restitution payments the defendant had made to his estate did not implicate the defendant's CJA reimbursement obligation.

## COUNSEL

Anthony L. François (argued) and Ethan W. Blevins, Pacific Legal Foundation, Sacramento, California, for Defendant-Appellant.

Eric E. Nelson (argued), Special Assistant United States Attorney; Kurt G. Alme, United States Attorney; United States Attorney's Office, Denver, Colorado; for Plaintiff-Appellee.

(4 of 19)
Case: 19-30237, 11/12/2020, ID: 11889435, DktEntry: 23-1, Page 4 of 15
Case 6:15-cr-00007-DWM   Document 302   Filed 11/12/20   Page 4 of 19

4                UNITED STATES V. ROBERTSON

## OPINION

STEARNS, District Judge:

We consider whether vacating the indictment against a criminal defendant *ab initio* following his death during the pendency of a certiorari petition to the Supreme Court requires vacation of an order issued under the Criminal Justice Act (CJA), 18 U.S.C. § 3006A, to make payments to reimburse in part the costs of his defense.

## I

In May of 2015, Joseph Robertson (Robertson) was indicted on two counts of unauthorized discharge of pollutants into United States waters under the Clean Water Act, 33 U.S.C. §§ 1311(a) and 1319(c)(a)(2), and one count of injury/depredation of property of the United States under 18 U.S.C. § 1361. Based on Robertson's representation of his assets, the district court appointed a public defender to represent Robertson pursuant to the CJA.[1] At the time of the appointment, the court informed Robertson that under the CJA, "if investigation reveals that [he] owns or has control over assets not disclosed herein, [he] will be required to reimburse the United States for all or part of the defense costs expended in his behalf."[2]

---

[1] At the expense of public funds, the CJA provides representation for a defense to "any person financially unable to obtain adequate representation" charged with, *inter alia*, a felony. 18 U.S.C.A. § 3006A(a).

[2] Such reimbursement authority is granted by the following provision of the CJA:

UNITED STATES V. ROBERTSON            5

Robertson's first trial, in October of 2015, resulted in a hung jury and a mistrial.  Based on information gleaned at trial regarding Robertson's personal finances, the district court referred the case to a magistrate judge to evaluate his eligibility for court-appointed counsel.  The magistrate judge determined that Robertson had sufficient assets to make partial payments.  In January of 2016, the district court found that Robertson was "partially eligible for an appointed attorney," and the court ordered Robertson to contribute towards the costs of his defense by making a lump sum payment of $12,000, followed by monthly payments of $300 beginning in February of 2016.

Robertson was convicted on all three counts at a second jury trial in April of 2016.  In addition to being sentenced to a term of imprisonment for eighteen months, he was ordered to pay $300 in special assessments and $129,933.50 in restitution to the United States Forest Service.  He appealed the conviction and the sentence, as well as the CJA reimbursement order.   This court, in two separate dispositions, affirmed.  *See United States v. Robertson*, 875 F.3d 1281 (9th Cir. 2017) (*Robertson I*) (conviction and

> Whenever the United States magistrate judge or the court finds that funds are available for payment from or on behalf of a person furnished representation, it may authorize or direct that such funds be paid to the appointed attorney, to the bar association or legal aid agency or community defender organization which provided the appointed attorney, to any person or organization authorized pursuant to subsection (e) to render investigative, expert, or other services, or to the court for deposit in the Treasury as a reimbursement to the appropriation, current at the time of payment, to carry out the provisions of this section.

*Id.* § 3006A(f).

| 6 | UNITED STATES v. ROBERTSON |
|---|---|

sentence), and *United States v. Robertson*, 704 F. App'x 705 (9th Cir. 2017) (*Robertson II*) (CJA reimbursement order).

Roberts filed a petition for certiorari with the Supreme Court challenging his conviction. His petition did not seek further review of the CJA reimbursement order. Robertson died in March of 2019, while the petition was pending. The Supreme Court granted the petition, vacated *Robertson I*, and remanded with instructions to this court to consider the issue of mootness.

In July of 2019, this court allowed the motion of Carri Robertson, Joseph Robertson's widow (Appellant), to vacate his conviction and sentence *ab initio* and to refund the amounts he had paid towards the special assessments and restitution. It then remanded the case to the district court with instructions to vacate the indictment, the judgment of conviction, the special assessments, and the restitution order.

The district court did so in an August 12, 2019 order, but noted that Robertson still owed $13,800 under the CJA reimbursement order.[3] In its October 7, 2019 order that is the subject of this appeal, the district court held that the CJA reimbursement order was not abated by the dismissal of the indictment, and further, that the $1,550 that Robertson had paid in special assessments and towards restitution was "available" under the CJA to be applied against the CJA obligation. This appeal ensued.

---

[3] The parties agree that Robertson had made two $300 CJA payments, and that the corrected amount outstanding is $13,200.

Case: 19-30237, 11/12/2020, ID: 11889435, DktEntry: 23-1, Page 7 of 15
Case 6:15-cr-00007-DWM   Document 302   Filed 11/12/20   Page 7 of 19

(7 of 19)

| UNITED STATES V. ROBERTSON | 7 |
|---|---|

## II

Appellant first contends that the dismissal of Robertson's indictment *ab initio* deprived the district court of subject matter jurisdiction to adjudicate any further obligations under the CJA reimbursement order. Questions of a district court's subject matter jurisdiction are reviewed *de novo*. *United States v. Aguilar-Reyes*, 653 F.3d 1053, 1055 (9th Cir. 2011). Appellant relies on *United States v. Rich*, 603 F.3d 722 (9th Cir. 2010), for the proposition that "[t]here is no doubt that death pending appeal of a criminal conviction abates not only the appeal but all proceedings in the prosecution from its inception." *Id.* at 724 (internal quotation marks and citation omitted).[4] In Appellant's view, because the CJA reimbursement order was part of the criminal proceeding against Robertson, the district court had no power to adjudicate the matter once the indictment had been vacated.

The Government correctly states that a district court has the power to determine whether its underlying orders are subject to abatement when an indictment is vacated. "[I]t is familiar law that a federal court always has jurisdiction to determine its own jurisdiction." *United States v. Ruiz*, 536 U.S. 622, 628 (2002). In *Ruiz*, the relevant statute authorized an appeal of a sentence if it "was imposed in violation of law." *Id.* at 626–27. Although the Supreme Court ultimately held that the contested sentence did not violate the law and that the statute therefore did not authorize an appeal, "[i]n order to make that determination, it was necessary for the Ninth Circuit to address the merits. We therefore hold that appellate jurisdiction was proper." *Id.*

---

[4] This principle is termed the rule (or sometimes doctrine) of abatement *ab initio*. *Id.*

8      UNITED STATES V. ROBERTSON

at 628. Even in *Rich*, the court exercised jurisdiction to determine whether the pre-indictment receivership and the post-indictment reimbursement orders abated. *Rich*, 603 F.3d at 724. It follows here that the district court had jurisdiction to determine whether its CJA reimbursement order was within the scope of the abatement doctrine.

## III

Whether a CJA reimbursement order falls within the scope of the abatement of an indictment is a matter of first impression for this court. Questions of law are reviewed by this court *de novo*. *United States v. Lo*, 839 F.3d 777, 783 (9th Cir. 2016).

## A

Both the Appellant and the Government identify *Rich*, *supra*, as the closest in-circuit authority. In *Rich*, a criminal defendant died while his conviction on twenty-four fraud counts related to a Ponzi scheme was on appeal. This court held that a restitution order imposed pursuant to the Victim and Witness Protection Act (VWPA), 18 U.S.C. § 3663, and the Mandatory Victim Restitution Act (MVRA), 18 U.S.C. § 3663A, was abrogated by abatement *ab initio*. *See Rich*, 603 F.3d at 724 ("[T]he rule of abatement *ab initio*[] prevents, among other things, recovery against the estate of a fine imposed as part of the *conviction* and *sentence* and use of an abated conviction against the estate in related civil litigation.") (emphasis in original). By providing for the imposition of restitution when sentencing a defendant convicted of a specified offense, 18 U.S.C. § 3661(a)(1), § 3663A(a)(1), the VWPA and MVRA require "that the defendant first must be 'convicted of an offense' so enumerated to support an order of restitution." *Rich*, 603 F.3d at 728. "Abatement of the convictions for those

(9 of 19)
Case: 19-30237, 11/12/2020, ID: 11889435, DktEntry: 23-1, Page 9 of 15
Case 6:15-cr-00007-DWM   Document 302   Filed 11/12/20   Page 9 of 19

UNITED STATES V. ROBERTSON                9

offenses, thus, nullifies the accompanying restitution order." *Id.*[5]

In so holding, the court rejected the argument that, because restitution orders are compensatory remedies that are equivalent to civil judgments, the doctrine of abatement *ab initio* does not encompass them. *Id.* at 729–30. While pointing out that restitution has always served dual penal and compensatory purposes, the court noted that a rationale for the abatement *ab initio* rule is the principle of finality. "'[A] criminal conviction is not final until resolution of the defendant's appeal as a matter of right.'" *Id.* at 730 (quoting *United States v. Logal*, 106 F.3d 1547, 1552 (1997)). Accordingly, "death abates even the record of a criminal conviction, as opposed to merely its use in collateral proceedings, even though the former has no immediate penal effects." *Id.*

The court in *Rich*, however, also held that a receivership established prior to Rich's conviction—receivership to which Rich had agreed—was not subject to abatement. *Id.* at 727. The receivership had been established on a temporary basis after Rich violated his conditions of pretrial release by excessively spending over $600,000. It was made permanent several months later (eighteen months prior to trial) by a stipulated order. *Id.* at 723. The stated purpose of the receivership was to preserve assets held by or seized from Rich with the view of eventually distributing them to the victims of his scheme. *Id.* "The receivership continues regardless of abatement of the conviction because the

---

[5] Circuit courts have split over the issue of whether criminal restitution orders fall under the abatement *ab initio* rule. *See Rich*, 603 F.3d at 728 (noting the split); *see also United States v. Coddington*, 802 F. App'x 373, 375 n.3 (10th Cir. 2020) (collecting cases).

| 10 | UNITED STATES V. ROBERTSON |
|---|---|

receivership was not dependent in any way on Rich's conviction. Nothing in the Receivership Order suggests it is extinguished by the Restitution Order, which, in turn, is silent on the point." *Id.* at 727.

### B

The parties also cite *United States v. Brooks*, 872 F.3d 78 (2d Cir. 2017), as persuasive authority. In *Brooks*, the Second Circuit held that the death of a defendant during the pendency of the appeal of his conviction for various shareholder fraud counts abated not only the convictions, but also the special assessments, fines, and the asset forfeiture and restitution orders. *See id.* at 87–90. Although recognizing the compensatory purpose of restitution, the Second Circuit noted that "because the language of the statute requires restitution in cases only where a defendant has been 'convicted of an offense,' we cannot separate restitution from conviction. [18 U.S.C. § 3663A(a)(1).] Without a valid conviction, the statute-based restitution order must be vacated." *Id.* at 89–90.

The Second Circuit did not, however, extend abatement to a forfeited security bond. Brooks had been released pretrial subject to posting a substantial bond, making a full disclosure of his financial holdings, and returning all his overseas assets to the United States. *Id.* at 83. Prior to trial, the district court determined that Brooks and his family had concealed substantial assets in violation of the pretrial release conditions. *Id.* at 84. It then revoked his bail and ordered the forfeiture of the forty-eight-million-dollar cash security bond. *Id.* In refusing to extend abatement to the security bond, the Second Circuit reasoned that "[t]he terms of the [pretrial release] Order were not part of the direct prosecution of the case, but were part of the district court's responsibility to assure the appearance of a criminal

(11 of 19)

Case: 19-30237, 11/12/2020, ID: 11889435, DktEntry: 23-1, Page 11 of 15
Case 6:15-cr-00007-DWM   Document 302   Filed 11/12/20   Page 11 of 19

UNITED STATES V. ROBERTSON                11

defendant separate from the ultimate—and subsequent—determination of the criminal defendant's ultimate guilt or innocence." *Id.* at 93.[6] Accordingly, "the bail forfeiture hearing was [also] collateral to the determination of guilt or innocence in Brooks's criminal case, arising out of a violation of separate orders and conditions entered by the court and agreed to by Brooks and his family members." *Id.*

> Further, bond forfeiture also does not implicate the two principles underlying the doctrine of abatement *ab initio* (finality and punishment). Brooks previously filed [an] interlocutory appeal of the revocation of his bail to this Court, and we affirmed the revocation. We address the family's later motion for return of the forfeited bail security pursuant to Fed. R. Crim. P. 46(f) below. But in neither case is there a non-final matter to abate, one that is tied to the ultimate determination of guilt or innocence. Similarly, a forfeited bail bond is not a punishment for a criminal offense that ceases to have purpose after a defendant's death, but instead is a remedy for a breach of the terms of the bail release order.

*Id.* at 94.

---

[6] The Second Circuit also noted that a "bail bond is interpreted 'within the general framework of suretyship and contract law.'" *Id.* at 93 (citation omitted). It followed that "[t]he forfeiture of a bail bond functions as damages for breach of the civil contract, not as a punishment for the commission of a criminal offense." *Id.*

(12 of 19)

Case: 19-30237, 11/12/2020, ID: 11889435, DktEntry: 23-1, Page 12 of 15
Case 6:15-cr-00007-DWM   Document 302   Filed 11/12/20   Page 12 of 19

| 12 | UNITED STATES V. ROBERTSON |
|---|---|

### C

Although Appellant accurately states that the CJA reimbursement order is neither an agreed-upon receivership nor a forfeited bond security, her attempt to distinguish *Rich* and *Brooks* is unavailing. Like the receivership and the forfeited bond security, the CJA reimbursement order "was not dependent in any way on [Robertson's] conviction." *Rich*, 603 F.3d at 727. This court previously made the same determination in Robertson's initial appeal of the CJA reimbursement order. Robertson had argued that he should not have to pay for the partial cost of his defense because his CJA eligibility was assessed and the reimbursement order entered after his mistrial, but before his eventual conviction and sentencing. *Robertson II*, 704 F. App'x at 705–06. This court noted that "the [CJA] statute itself does not by its terms require that a defendant be convicted before the court may order reimbursement of the cost of appointed representation." *Id*. at 705 (citing 18 U.S.C. § 3006A(f)).

> While another section of the CJA Guidelines permits the court to order reimbursement at sentencing, that provision does not limit the time to reassess eligibility to only sentencing after a conviction. *See* [Criminal Justice Act Guidelines] § 210.40.30(d). More importantly, the statute allows the court to order reimbursement "[w]henever the United States magistrate judge or the court finds that funds are available for payment from or on behalf of a person furnished representation." 18 U.S.C. § 3006A(f). The plain language of this statute makes it clear that the district court acted within its discretion when it reassessed Robertson's eligibility and

(13 of 19)

Case: 19-30237, 11/12/2020, ID: 11889435, DktEntry: 23-1, Page 13 of 15
Case 6:15-cr-00007-DWM   Document 302   Filed 11/12/20   Page 13 of 19

UNITED STATES V. ROBERTSON 13

> ordered reimbursement and payment for future defense costs before sentencing.

*Id.* at 706. Because a CJA reimbursement may be ordered in the absence of a conviction (after a mistrial, in this case), *see also States v. Wilson*, 597 F.3d 353 (6th Cir. 2010) (requiring CJA reimbursement after defendant was acquitted), it is not a part of the criminal proceeding that is extinguished by abatement *ab initio*. *See United States v. Standiford*, 148 F.3d 864, 870 (7th Cir. 1998) (A CJA reimbursement order "must be regarded as an independent civil liability.").

In response, Appellant makes a species of "but-for" argument: because a felony indictment is a statutory prerequisite to the appointment of an attorney under the CJA, *see* 18 U.S.C. § 3006A(a)(1), the appointment and the associated costs are similarly abated when the indictment is nullified *ab initio*. The *Brooks* court addressed this contention squarely in the context of a bail security forfeiture.

> While it is true that "but-for" the prosecution of the case against him, Brooks would not have been subject to the bail bond and the resulting forfeiture, this argument fails. When the district court in this case imposed the terms of pre-trial release on Brooks, it did so for reasons independent of the determination of his guilt or innocence. These terms and conditions were not determined by the outcome of the offenses prosecuted, and therefore the principles of abatement do not apply.

(14 of 19)

Case: 19-30237, 11/12/2020, ID: 11889435, DktEntry: 23-1, Page 14 of 15
Case 6:15-cr-00007-DWM   Document 302   Filed 11/12/20   Page 14 of 19

| 14 | UNITED STATES V. ROBERTSON |
|---|---|

*Brooks*, 872 F.3d at 94.  Similarly, the CJA reimbursement order at issue here was imposed on a basis independent from the determination of Robertson's guilt or innocence— namely, a reassessment of his financial condition.[7]

**D**

There is also heft to the argument that enforcing Robertson's CJA reimbursement order comports with the principle of finality.  As the courts in *Rich* and *Brooks* explained, only "non-final matter[s]," *Brooks*, 872 F.3d at 94, are abated because a defendant's death prevents the proceeding from reaching a conclusion.  *See Rich*, 603 F.3d at 730.  Here, Robertson did not challenge this court's affirmance of the CJA reimbursement order when he sought certiorari from the Supreme Court.  Accordingly, the affirmed CJA reimbursement order is a final order not subject to abatement.

---

[7] The soundness of a CJA reimbursement order is also determined against the circumstances as of the time it was issued.  In *Robertson II*, Robertson argued that he should not have to pay any part of his defense because his presentence investigation report indicated that he did not have the ability to pay a fine.  *Robertson II*, 704 F. App'x at 706.  This court rejected the argument, noting that because the reimbursement order was issued prior to Robertson's conviction, the presentence investigation report was not properly before the court.  "Robertson [did] not contest the district court's factual findings or the conclusions that it made *when it ordered reimbursement and payment of future defense costs*.  The district court did not abuse its discretion by not relying on a document that did not exist at the time it issued its order."  *Id*. (emphasis added). Moreover, the reimbursement order here specifically stated that, if "Robertson's financial condition changes, he may petition the Court for a reduction in the defense costs in this matter."  Although Robertson sought and obtained partial stays of his reimbursement obligation pending appeal, he never formally asked the district court to reduce the amount of that underlying obligation.

(15 of 19)

Case: 19-30237, 11/12/2020, ID: 11889435, DktEntry: 23-1, Page 15 of 15
Case 6:15-cr-00007-DWM   Document 302   Filed 11/12/20   Page 15 of 19

UNITED STATES V. ROBERTSON       15

## IV

Appellant finally contends that the Government waived the right to enforce the CJA reimbursement order when it acquiesced, on remand from the grant of certiorari from the Supreme Court, to return the restitution payments Robertson had made (in the amount of $1,550) to his estate, and further, that because the estate has obligations to other creditors, this fund is not "available" within the meaning of the CJA.  *See* 18 U.S.C. § 3006A(f).  Questions of waiver, as well as statutory interpretation, are reviewed *de novo*.  *Lo*, 839 F.3d at 783.  As previously noted, Robertson's petition for certiorari to the Supreme Court did not address the CJA reimbursement order.  Neither Appellant nor the Government raised the issue of the CJA reimbursement order when raising the abatement motion to this court.  There is no reason to conclude that the Government's agreement to return the restitution funds implicated Robertson's CJA reimbursement obligation.[8]

## V

The CJA reimbursement order is a final order "not dependent in any way on [Robertson]'s conviction," *Rich*, 603 F. 3d at 727, and is beyond the application of the abatement *ab initio* rule.  The district court's order to enforce this obligation is **AFFIRMED**.

---

[8] Having determined that the CJA reimbursement order is an unabated final order, the outstanding amount ($13,200) constitutes a debt owed by Robertson's estate to the United States.  Robertson's estate receives full benefit of the returned $1,550 by having it applied towards this obligation.

# United States Court of Appeals for the Ninth Circuit

## Office of the Clerk
95 Seventh Street
San Francisco, CA 94103

## Information Regarding Judgment and Post-Judgment Proceedings

**Judgment**
- This Court has filed and entered the attached judgment in your case. Fed. R. App. P. 36.  Please note the filed date on the attached decision because all of the dates described below run from that date, not from the date you receive this notice.

**Mandate (Fed. R. App. P. 41; 9th Cir. R. 41-1 & -2)**
- The mandate will issue 7 days after the expiration of the time for filing a petition for rehearing or 7 days from the denial of a petition for rehearing, unless the Court directs otherwise.  To file a motion to stay the mandate, file it electronically via the appellate ECF system or, if you are a pro se litigant or an attorney with an exemption from using appellate ECF, file one original motion on paper.

**Petition for Panel Rehearing  (Fed. R. App. P. 40; 9th Cir. R. 40-1)**
**Petition for Rehearing En Banc (Fed. R. App. P. 35; 9th Cir. R. 35-1 to -3)**

(1)   A.   **Purpose (Panel Rehearing):**
- A party should seek panel rehearing only if one or more of the following grounds exist:
    - ► A material point of fact or law was overlooked in the decision;
    - ► A change in the law occurred after the case was submitted which appears to have been overlooked by the panel; or
    - ► An apparent conflict with another decision of the Court was not addressed in the opinion.
- Do not file a petition for panel rehearing merely to reargue the case.

   B.   **Purpose (Rehearing En Banc)**
- A party should seek en banc rehearing only if one or more of the following grounds exist:

- ▶ Consideration by the full Court is necessary to secure or maintain uniformity of the Court's decisions; or
- ▶ The proceeding involves a question of exceptional importance; or
- ▶ The opinion directly conflicts with an existing opinion by another court of appeals or the Supreme Court and substantially affects a rule of national application in which there is an overriding need for national uniformity.

**(2) Deadlines for Filing:**
- A petition for rehearing may be filed within 14 days after entry of judgment. Fed. R. App. P. 40(a)(1).
- If the United States or an agency or officer thereof is a party in a civil case, the time for filing a petition for rehearing is 45 days after entry of judgment. Fed. R. App. P. 40(a)(1).
- If the mandate has issued, the petition for rehearing should be accompanied by a motion to recall the mandate.
- *See* Advisory Note to 9th Cir. R. 40-1 (petitions must be received on the due date).
- An order to publish a previously unpublished memorandum disposition extends the time to file a petition for rehearing to 14 days after the date of the order of publication or, in all civil cases in which the United States or an agency or officer thereof is a party, 45 days after the date of the order of publication. 9th Cir. R. 40-2.

**(3) Statement of Counsel**
- A petition should contain an introduction stating that, in counsel's judgment, one or more of the situations described in the "purpose" section above exist. The points to be raised must be stated clearly.

**(4) Form & Number of Copies (9th Cir. R. 40-1; Fed. R. App. P. 32(c)(2))**
- The petition shall not exceed 15 pages unless it complies with the alternative length limitations of 4,200 words or 390 lines of text.
- The petition must be accompanied by a copy of the panel's decision being challenged.
- An answer, when ordered by the Court, shall comply with the same length limitations as the petition.
- If a pro se litigant elects to file a form brief pursuant to Circuit Rule 28-1, a petition for panel rehearing or for rehearing en banc need not comply with Fed. R. App. P. 32.

- The petition or answer must be accompanied by a Certificate of Compliance found at Form 11, available on our website at www.ca9.uscourts.gov under *Forms.*
- You may file a petition electronically via the appellate ECF system. No paper copies are required unless the Court orders otherwise. If you are a pro se litigant or an attorney exempted from using the appellate ECF system, file one original petition on paper. No additional paper copies are required unless the Court orders otherwise.

**Bill of Costs (Fed. R. App. P. 39, 9th Cir. R. 39-1)**
- The Bill of Costs must be filed within 14 days after entry of judgment.
- See Form 10 for additional information, available on our website at www.ca9.uscourts.gov under *Forms.*

**Attorneys Fees**
- Ninth Circuit Rule 39-1 describes the content and due dates for attorneys fees applications.
- All relevant forms are available on our website at www.ca9.uscourts.gov under *Forms* or by telephoning (415) 355-7806.

**Petition for a Writ of Certiorari**
- Please refer to the Rules of the United States Supreme Court at www.supremecourt.gov

**Counsel Listing in Published Opinions**
- Please check counsel listing on the attached decision.
- If there are any errors in a published opinion, please send a letter **in writing within 10 days** to:
  - ► Thomson Reuters; 610 Opperman Drive; PO Box 64526; Eagan, MN 55123 (Attn: Jean Green, Senior Publications Coordinator);
  - ► and electronically file a copy of the letter via the appellate ECF system by using "File Correspondence to Court," or if you are an attorney exempted from using the appellate ECF system, mail the Court one copy of the letter.

(19 of 19)

Case: 19-30237, 11/12/2020, ID: 11889435, DktEntry: 23-2, Page 4 of 4
Case 6:15-cr-00007-DWM   Document 302   Filed 11/12/20   Page 19 of 19

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 10. Bill of Costs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form10instructions.pdf

**9th Cir. Case Number(s)** [ ]

**Case Name** [ ]

The Clerk is requested to award costs to (*party name(s)*):

[ ]

I swear under penalty of perjury that the copies for which costs are requested were actually and necessarily produced, and that the requested costs were actually expended.

**Signature** [ ]   **Date** [ ]

(use "s/[typed name]" to sign electronically-filed documents)

| COST TAXABLE | REQUESTED (each column must be completed) | | | |
|---|---|---|---|---|
| DOCUMENTS / FEE PAID | No. of Copies | Pages per Copy | Cost per Page | TOTAL COST |
| Excerpts of Record* | | | $ | $ |
| Principal Brief(s) (*Opening Brief; Answering Brief; 1st, 2nd, and/or 3rd Brief on Cross-Appeal; Intervenor Brief*) | | | $ | $ |
| Reply Brief / Cross-Appeal Reply Brief | | | $ | $ |
| Supplemental Brief(s) | | | $ | $ |
| Petition for Review Docket Fee / Petition for Writ of Mandamus Docket Fee | | | | $ |
| | | | **TOTAL:** | $ |

***Example:*** Calculate 4 copies of 3 volumes of excerpts of record that total 500 pages [Vol. 1 (10 pgs.) + Vol. 2 (250 pgs.) + Vol. 3 (240 pgs.)] as:
No. of Copies: 4; Pages per Copy: 500; Cost per Page: $.10 (or actual cost IF less than $.10);
TOTAL: 4 x 500 x $.10 = $200.

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 10** *Rev. 12/01/2018*